**ORAL ARGUMENT NOT YET SCHEDULED**

No. 14-5136
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA**
_____

FATHER RAY LEONARD AND FRED NAYLOR,

*Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF DEFENSE, ET AL.,

*Defendants-Appellees.*

_____

On Appeal from the U.S. District Court for the District of Columbia,
No. 1:13-cv-01571 (Hon. Ellen S. Huvelle)
_____

**PLAINTIFFS-APPELLANTS' BRIEF**
_____

Erin Mersino
Thomas More Law Center
24 Frank Lloyd Wright Drive
Ann Arbor, Michigan  48106
(734) 827-2001
emersino@thomasmore.org
Attorney for Plaintiffs-Appellants

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Plaintiffs-Appellants certify as follows:

**A.     Parties**

**i.     Plaintiffs-Appellants**

Plaintiffs-Appellants are Father Ray Leonard ("Father Ray") and Fred Naylor (collectively "Plaintiffs").

**ii.     Corporate Disclosure Statement**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Plaintiffs state the following: Plaintiffs are not a subsidiary or affiliate of a publicly owned corporation. There are no publicly owned corporations, party to this appeal, that have a financial interest in the outcome.

**iii.     Defendants-Appellees**

Defendants-Appellees are the United States Department of Defense; Chuck Hagel, in his official capacity as the Secretary of the U.S. Department of Defense; the United States Department of the Navy; Ray Mabus, in his official capacity as the secretary of the U.S. Department of the Navy; Bethany Germann, in her official capacity with the U.S. Department of the Navy; and Rebecca Washington, in her official capacity with the U.S. Department of the Navy (collectively "Defendants").

**B.**    **Rulings**

Plaintiffs are appealing from the order and supporting memorandum opinion of U.S. District Court Judge Ellen S. Huvelle entered on April 30, 2014, granting Defendants' motion to dismiss.  The order and supporting memorandum opinion appear on the district court's docket at entries 24 and 25 respectively and in the Appendix at (A181-92).

**C.**    **Related Cases**

This case has never previously been before this Court.  Plaintiffs are not aware of any related cases.


October 14, 2014                    Respectfully submitted,


                                   THOMAS MORE LAW CENTER

                                   By:    /s/ Erin Mersino
                                          Erin Mersino, Esq.

                                   *Attorney for Plaintiffs-Appellants*

## REASONS WHY ORAL ARGUMENT SHOULD BE PERMITTED

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure, Plaintiffs respectfully request that this court hear oral argument. This case presents for review important questions of constitutional law. Oral argument will assist this Court in reaching a full understanding of the issues presented and the underlying facts. Moreover, oral argument will allow the attorneys for both sides to address any outstanding legal or factual issues that this Court deems relevant.

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

    A.    Parties .........................................................................................i

    B.    Rulings........................................................................... ii

    C.    Related Cases ................................................................. ii

REASONS WHY ORAL ARGUMENT SHOULD BE PERMITTED .................. iii

TABLE OF AUTHORITIES .........................................................vi

GLOSSARY........................................................................1

INTRODUCTION ..................................................................1

JURISDICTIONAL STATEMENT ...................................................2

STATEMENT OF THE ISSUES......................................................3

STATEMENT OF PERTINENT AUTHORITIES .................................3

STATEMENT OF THE CASE........................................................3

STATEMENT OF FACTS ...........................................................4

    I.    The Anti-Deficiency Act ......................................................6

    II.    The Pay Our Military Act........................................................8

    III.    First Amendment Retaliation ....................................................9

SUMMARY OF THE ARGUMENT ...................................................11

STANDARD OF REVIEW ..........................................................12

ARGUMENT ..................................................................................................13

    I.    The District Court Erred by Dismissing Plaintiffs' Claims for
        Lack of Subject Matter Jurisdiction .....................................................13

        A.    Injuries Sustained During a Government Shutdown are
             Redressable .............................................................................14

        B.    Plaintiffs' Challenge to the Anti-Deficiency Act under
             RFRA and the First Amendment is Not Moot.........................18

    II.    The District Court Erred by Dismissing Father Ray's Retaliation
        Claim for Lack of Standing ...................................................................25

CONCLUSION ..............................................................................................27

CERTIFICATE OF COMPLIANCE...............................................................28

CERTIFICATE OF SERVICE .......................................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page**

*Adarand Constructors, Inc. v. Slater,*
528 U.S. 216 (2000) ..................................................................................18

*Aetna Life Inc. Co. v. Haworth,*
330 U.S. 227 (1937) .............................................................................11, 13

*Allen v. Wright,*
468 U.S. 737 (1984) ..................................................................................24

*Am. Fed'n of Gov't Employees v. Rivlin,*
995 F. Supp. 165 (D.D.C. 1998) ...............................................................21

*Camreta v. Greene,*
131 S. Ct. 2020 (2011) ..............................................................................20

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,*
331 U.S. App. D.C. 226 (D.C. Cir. 1998) .................................................13

*Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. District of Columbia,*
972 F.2d 365 (D.C. Cir. 1992) .............................................................17, 18

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ....................................................................................26

*City of Mesquite v. Aladdin's Castle, Inc.,*
455 U.S. 283 (1982) ..................................................................................18

*Clarke v. United States,*
915 F.2d 699 (D.C. Cir. 1990) ..................................................................16

*Elrod v. Burns,*
427 U.S. 347 (1976) ..................................................................................16

*Felter v. Kempthorne,*
473 F.3d 1255 (D.C. Cir. 2007) ................................................................12

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
528 U.S. 167 (2000) .........................................................................18, 19

*Guardian Moving & Storage Co. v. ICC,*
952 F.2d 1428 (D.C. Cir. 1992) .....................................................17

*Jerome Stevens Pharms., Inc. v. FDA,*
402 F.3d 1249 (D.C. Cir. 2005) .....................................................12

*Lewis v. Continental Bank Corp.,*
494 U.S. 472 (1990) .......................................................................16

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...............................................................12, 24, 25

*NB ex rel. Peacock v. Dist. of Columbia,*
682 F.3d 77 (D.C. Cir. 2012) .....................................................25, 26

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No.1,*
551 U.S. 701 (2007) .......................................................................18

*State Nat'l Bank of Big Spring v. Lew,*
958 F.3d 499 (D.D.C. 2013) .........................................................25

*Southern Pacific Terminal Co. v. ICC,*
219 U.S. 498, 515 (1911) ..........................................................11, 17

*Transwestern Pipeline Co. v. FERC,*
897 F.2d 570 (D.C. Cir. 1990) .....................................................16

*United States v. Concentrated Phosphate Export Ass'n., Inc.,*
393 U.S. 199 (1968) ...................................................................18, 19

*United States v. W.T. Grant Co.,*
345 U.S. 629 (1953) ...................................................................12, 18

*Walker v. Jones,*
733 F.2d 923 (D.C. Cir 1984) .......................................................12

*Warth v. Seldin,*
422 490 (1975) ................................................................................25

*West Virginia State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943) .........................................................................23


## **Statutes and Rules**

Fed.R.Civ.P. 12(b)(1) .......................................................................12

28 U.S.C. § 1331 ................................................................................2

28 U.S.C. § 1343 ................................................................................2

28 U.S.C. § 2201(a) ................................................................3, 11, 15

31 U.S.C. § 1341(a) ...........................................................................6

31 U.S.C. § 1342 ......................................................................1, 3, 6

31 U.S.C. § 1350 ......................................................................1, 3, 6

42 U.S.C. § 1983 ......................................................................*passim*

42 U.S.C. § 2000BB(a)(1) .................................................................22

42 U.S.C. § 2000BB(a)(2)-(3) ...........................................................23

42 U.S.C. § 2000bb .....................................................................3, 10

42 U.S.C. § 2000bb-1(b) ...................................................................24

42 U.S.C. § 2000bb-2(3) ...................................................................24

42 U.S.C. § 2000bb-3(a) ...................................................................22

## **Other**

U.S. Const. art. III § 2 ................................................................................................13

# GLOSSARY

| | |
|---|---|
| A | Appendix |
| CCD | Confraternity of Christian Doctrine |
| Defendants | Defendants-Appellees United States Department of Defense, Chuck Hagel, United States Department of the Navy, Ray Mabus, Bethany Germann, and Rebecca Washington |
| District Court | U.S. District Court for the District of Columbia |
| Father Ray | Plaintiff-Appellant Father Ray Leonard |
| Plaintiffs | Plaintiffs-Appellants Father Ray Leonard and Fred Naylor |
| RFRA | Religious Freedom Restoration Act |

## INTRODUCTION

A government shutdown is not a new or novel concept. In recent times, the government has shutdown no less than eighteen (18) times. (A89). During this time of shutdown, all employees of the federal government are barred from volunteering their services under the Anti-Deficiency Act. (A89-90); 31 U.S.C. § 1342. Pursuant to the Act, an employee who volunteers his/her services during a time of shutdown is subject to arrest and monetary penalties. 31 U.S.C. § 1350.

This case presents the inherent conflict between the Anti-Deficiency Act and our First Amendment freedoms. The Plaintiffs, who include a Catholic priest hired by the United States Department of Defense to serve the active duty military

1

servicemen and veterans and one of his parishioners, were denied the ability to practice their faith by the federal government due to governmental shutdown. Defendants ordered for Plaintiffs' Chapel to be locked. Defendants posted a sign on Plaintiffs' Chapel stating that no Catholic services could be held. Defendants threatened the Catholic priest with arrest and fines if he celebrated Mass voluntarily on the base or shared his faith with his parishioners, as his faith requires. And nothing is preventing this denial of freedom from reoccurring.

The Anti-Deficiency Act, the law that sought to punish and denied Plaintiffs of their religious exercise, is still on the books and can easily be enforced in the same manner again. This case presents a live case and controversy that needs to be adjudicated. The District Court erroneously held that, despite Plaintiffs having been denied their First Amendment freedoms and facing the threat of future injury, the case was moot. The District Court's decision is legal error and demands reversal. The District Court's holding creates dangerous precedent that the federal government has free reign to violate our constitutional rights during a time of government shutdown, as any injury sustained during this time has been anointed by the District Court to escape reproach.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. On April 30, 2014, the District Court granted the Defendants' motion to dismiss.

2

(A 181-92). Plaintiffs filed a timely notice of appeal. (A193-212). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Whether Plaintiffs' claims are moot when Plaintiffs challenge a presently enacted law and have sustained the loss of constitutional freedoms?

II.    Whether Father Ray has standing to bring a First Amendment retaliation claim when he incurred the delayed payment of his income and the peril of losing his job, and still faces the threat of further retaliation?

## STATEMENT OF PERTINENT AUTHORITIES

The following provisions are included in pertinent part within the body of Appellants' Brief and in Plaintiffs' Appendix and are incorporated by reference: the "Anti-Deficiency Act," 31 U.S.C. § 1342; 31 U.S.C. § 1350, the "Declaratory Judgment Act," 28 U.S.C. § 2201(a); the "Pay Our Military Act," H.R. 3210; 42 U.S.C. § 1983; and the "Religious Freedom Restoration Act" 42 U.C.S. § 2000bb.

## STATEMENT OF THE CASE

On January 3, 2014, Plaintiffs filed their Amended Complaint against Defendants alleging violations of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. (A82). Specifically, Plaintiffs challenged the Anti-Deficiency Act, 31 U.S.C. § 1342; 31 U.S.C. § 1350, and the Pay Our Military Act, H.R. 3210, which threatens to penalize government

employees for administering religious services during times of government shutdown. (A82). The regulations also deny military veterans religious services. (A82). Plaintiffs sought injunctive relief against the regulations to the extent the regulations prevent sermons and religious counseling and violate Plaintiffs' rights to free speech, free association, and religious exercise. (A82-83). Father Ray also sought injunctive relief from the Defendants' retaliatory conduct which ensued after the filing of the Plaintiffs' original Complaint on October 14, 2013. (A5, 83).

On March 3, 2014, Defendants motioned to dismiss Plaintiffs' Amended Complaint. (A100). Defendants argued that Plaintiffs' claims lacked subject matter jurisdiction because Father Ray "has suffered no injury that would establish standing" and that Father Ray's retaliation claim was "precluded . . . pursuant to the Contract Disputes Act." (A102). On March 17, 2014, Plaintiffs filed their opposition to Defendants' motion to dismiss. (A129). Defendants replied on March 27, 2014. (A164). On April 30, 2014, the District Court granted Defendants' motion to dismiss in its entirety and dismissed all claims asserted by the Plaintiffs. (A181, 192). Plaintiffs noticed their appeal on May 29, 2014. (A193).

## STATEMENT OF FACTS

The material facts can be found in the Plaintiffs' Amended Complaint. (A82-99).

Plaintiff Father Ray is a Catholic Priest. (A84). Father Ray devotes his life to religious worship. (A84). Father Ray exercises his religious faith through evangelizing, public speaking, celebrating God's grace through daily and weekly Mass, and sharing the Sacraments with his parishioners. (A84). These activities are vital to Father Ray's vocation as a Catholic priest and to his religious exercise. (A84). The Catholic faith requires followers to attend Mass and receive the Holy Communion on the Sabbath every week. (A88).

Father Ray serves as a civilian Priest under contract with the United States Department of Defense. (A85). Father Ray is the Pastor in charge of providing religious services at the Naval Submarine Base Kings Bay. (A85). Father Ray ministers to military servicemen and women, their families, and military support and civilian personnel of the St. Francis faith community on base. (A85). Plaintiff Fred Naylor is a parishioner in Father Ray's faith community. (A85). Fred Naylor is a retired Navy Veteran with over twenty-two (22) years of military service and is a practicing, faithful Catholic. (A85).

The Naval Submarine Base Kings Bay where the St. Francis faith community worships is remotely located and partially comprised of protected wetlands. (A88). Father Ray serves approximately 300 families in his community. (A88). Father Ray's parishioners mostly live and work on base; many do not own a car. (A88).

5

## I.      The Anti-Deficiency Act

On October 1, 2013, the United States government entered a period of shutdown.  (A89).  The government has periodically shutdown in recent history.  (A89).  Since the late 1970's, the government has shutdown at least eighteen (18) times.  (A89).  When the government shuts down, many employees of the United States federal government, such as Father Ray, are prohibited from working under the Anti-Deficiency Act.  (A89-90); *see also* 31 U.S.C. § 1342; 31 U.S.C. 1350.  The Anti-Deficiency Act states in pertinent part:

> An officer or employee of the United State Government . . . may not accept voluntary services for either government or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property. . . . As used in this section, the term "emergencies involving the safety of human life or the protection of property" does not include ongoing, regular functions of government the suspension of which would not imminently threaten the safety of human life or the protection of property.

31 U.S.C. § 1342.  The penalties for violating the Anti-Deficiency Act require the "[a]n officer or employee of the United States Government . . . knowingly and willfully violating section 1341(a) or 1342 of this title [31 U.S.C. § 1341(a) or 1342] shall be fined not more than $5,000, imprisoned for not more than 2 years, or both."  31 U.S.C. § 1350.  Therefore on October 4, 2013, Father Ray was ordered to stop performing his duties as a Catholic Priest, even on a volunteer basis.  (A90).  Father Ray was told that he would be arrested if he practiced his

6

faith on the base. (A90). The United States Department of Defense posted a sign on the doors of Father Ray's Chapel stating that due to the government shutdown all Catholic services are cancelled. (A90). The doors to Father Ray's Chapel were locked, with the Holy Eucharist, Holy water, Catholic Hymn books, and vessels all locked inside. (A90). All parishioners, including Fred Naylor, were prohibited from entry. (A90).

Father Ray was forced to cancel several blessings, Masses, and services. (A91). On October 5, 2013, the United States Department of Defense cancelled Father Ray's and his faith community's blessing of animals in honor of their patron saint, St. Francis of Assisi. (A91). All daily and weekend Masses, along with all sacraments, services, and practices were cancelled due to the enforcement of the Anti-Deficiency Act. (A91). Father Ray was not even allowed to visit his Chapel or office. (A91). All Confraternity of Christian Doctrine (CCD) classes and meetings were disallowed. (A91). All preparation of Catholic Sacraments, such as confirmation and marriage, were forbidden. (A91). Fred Naylor and his family attend Mass and participate in CCD services, but were unable to because all Catholic services were cancelled. (A91). However individuals belonging to other faiths, such as the Protestant faith, were allowed to continue their religious services during the time of government shutdown. (A91).

7

## II.     The Pay Our Military Act

Prior to the government shutting down on October 1, 2013, Congress passed the Pay Our Military Act.  H.R. 3210.  (A91).  The Act appropriates funds to pay active service members of the Armed Forces during times of governmental shutdown.  (A91).  The Act also allows for the Secretary of Defense to appropriate funds to civilian members of the military.  (A91).   The Act, however, was not extended to pay for the services of Father Ray.  (A91).  Therefore, Father Ray, was not permitted to work, even on a volunteer basis, and exercise his religious faith by saying Mass, educating his faith community, or celebrating the Sacraments.  (A91). If Father Ray would have worked voluntarily, he would have *ipso facto* been subjected to the penalties of the Anti-Deficiency Act.  (A91).

Due to facing arrest and monetary penalties for practicing his Catholic faith, Father Ray filed the original Complaint in this action on October 14, 2013.  (A91). Fred Naylor joined in the Complaint due to his deprivation of engaging in Catholic religious services on base as a parishioner of the St. Francis faith community. (A91).  On October 15, 2013, as a result of filing the original Complaint, the Defendants voluntarily ceased their application of the Anti-Deficiency Act on Father Ray.  (A93).  Other military chaplains were still not allowed to return to work.  (A93).  On October 16, 2013, there were still 81 Catholic military chaplains being threaten with penalty and/or arrest for practicing their faith in violation of the

Anti-Deficiency Act. (A93). Due to the filing of this lawsuit, Father Ray was allowed to return to work on October 16, 2013. (A93). The Anti-Deficiency Act, however, is still on the books and is current, presently enacted law. (A90).

### III.    First Amendment Retaliation

On October 21, 2013, however, Father Ray received an email from Rebecca Washington of the United States Department of the Navy. (A93). The United States Department of the Navy communicated to Father Ray that he needed to sign a new contract in order to maintain his employment. (A93). The new contract included five additional pages of terms and was far less appealing and far more onerous than Father Ray's current contract. (A93). On November 25, 2013, Bethany Germann of the United States Department of the Navy threatened that if Father Ray did not sign the new contract, the United States Department of the Navy would find his replacement. (A93). The Archdiocese for the Military Services reviewed this action, and determined that no other employee's contract was being handled in this manner. (A93). Father Ray's contract of employment was singled out and subjected to unjust scrutiny due to the filing of this lawsuit. (A94). Defendants also delayed and rejected payment on Father Ray's contract in retaliation for filing this civil rights lawsuit. (A94). From 2013-14, Father Ray has continued to work under his employment contract as a Catholic Priest on the base. (A88).

9

Plaintiffs assert five claims in total in their Amended Complaint. (A94-99). Plaintiffs first assert that the Anti-Deficiency Act violated the Religious Freedom Restoration Act ("RFRA"). 42 U.S.C. § 2000bb; (A94). The Anti-Deficiency Act threatens arrest and penalizes voluntary religious services, such as those performed by Father Ray and enjoyed by Fred Naylor. (A94-95). The fines and threats contained in the Anti-Deficiency are a substantial burden on religious exercise. (A95). Defendants have no compelling interest in refusing Plaintiffs access to their chapel and prohibiting Catholic Services on the base, especially when other religions are allowed to continue their services. (A95). Defendants failed to use the least restrictive means. (A95).

Plaintiffs also assert claims for the violation of their free exercise of religion, freedom of assembly, and freedom of speech pursuant to 42 U.S.C. § 1983. (A96-98). Father Ray asserts a First Amendment Retaliation claim due to the Defendants' adverse and hostile actions against him in reaction to the filing of this lawsuit. (A98-99).

The District Court, however, never analyzed the substance of any of the Plaintiffs' claims. Instead the District Court granted Defendants' motion to dismiss based upon its finding that Plaintiffs lacked of subject matter jurisdiction. (A201-12).

## SUMMARY OF THE ARGUMENT

The District Court acted contrary to law and reason when it determined that Plaintiffs' injuries could not be redressed by the court for want of subject matter jurisdiction. Defendants denied Plaintiffs of their rights to exercise religious freedom, and to freely speak and associate. Defendants' enforcement of the Anti-Deficiency Act threatened Father Ray with fines and imprisonment for voluntarily carrying out the duties of a Catholic Priest and denied Fred Naylor of his ability to attend Mass and otherwise engage in Catholic services on base. Defendants' acts and enforcement of the Anti-Deficiency Act presents an actual case and controversy that deserves its day in court. *Aetna Life Ins. v. Haworth*, 300 U.S. 227 (1937).

Plaintiffs' claims are not moot. The District Court failed to recognize Plaintiffs' existing injuries, and ignored the incurred violations of their constitutional rights and the RFRA. The District Court failed to address why Plaintiffs' claims could not be redressed by a declaratory judgment. 42 U.S.C. § 1983; 28 U.S.C. § 2201(a). Plaintiffs "have suffered . . . an actual injury traceable to the defendants." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). And the Anti-Deficiency Act is still the current law. 31 U.S.C. § 1042. The Defendants' constitutional infringements are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). The

11

fact that the Defendants voluntarily ceased their enforcement of this law in response to Father Ray's filing of the original Complaint does not moot this case. (A93). Defendants have fallen short of meeting their "formidable burden" that Plaintiffs' injuries will never reoccur. *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953).

Lastly, Father Ray satisfies standing to bring his retaliation claim. In response to filing this lawsuit, Defendants threatened to invalidate Father Ray's contract and terminate Father Ray's employment, and rejected Father Ray's payment for work he completed. (A92-94). Father Ray reasonably fears further retaliation due to Defendants' behavior toward him. (A158). Due to Defendants' retaliatory actions, Father Ray has suffered an injury in fact that is fairly traceable to the challenged action and that can be redressed by a favorable decision by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## STANDARD OF REVIEW

This Court reviews a District Court's dismissal of a complaint for lack of subject matter jurisdiction *de novo*. *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007). When analyzing whether dismissal is appropriate under Fed.R.Civ.P. 12(b)(1), all allegations in a plaintiff's complaint should be accepted as true and construed favorably to the pleader. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Walker v. Jones*, 733 F.2d 923, 925-

12

926 (D.C. Cir. 1984).  To survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff is not required to plead facts sufficient to prove his allegations; rather, a court should only dismiss a complaint for lack of subject matter jurisdiction if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 331 U.S. App. D.C. 226, 148 F.3d 1080, 1086 (D.C. Cir. 1998) (citations and internal quotation marks omitted).

## ARGUMENT

### I.    The District Court Erred by Dismissing Plaintiffs' Claims for Lack of Subject Matter Jurisdiction.

Article III of the Constitution confines the federal courts to adjudicating actual "cases" or "controversies."   U.S. Const. art. III, § 2.   An "actual controversy" in a constitutional sense is necessary to sustain jurisdiction in this court.  *See, e.g., Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).   As stated by the Supreme Court:

> A *justiciable controversy* is . . . distinguished from a difference or dispute of a *hypothetical* or *abstract* character; from one that is *academic* or *moot*. The controversy must be definite and concrete, touching the legal relations of parties having *adverse legal interests*. It must be a *real and substantial controversy* admitting of specific relief *through a decree of a conclusive character*, as distinguished from *an opinion advising what the law would be upon a hypothetical state of facts*. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, *the judicial function may be appropriately exercised . . . .*

13

*Id.* at 240-41 (citations omitted) (emphasis added). Here, there is nothing "hypothetical," "abstract," "academic," or "moot" about the claims advanced. This case presents "a real and substantial controversy" between parties with "adverse legal interests," and this controversy can be resolved "through a decree of a conclusive character." *Id*. It will not require the court to render "an opinion advising what the law would be upon a hypothetical state of facts." *Id*. This case presents a "justiciable controversy" in which "the judicial function may be appropriately exercised." *Id.*

The District Court erred by determining that the deprivation of First Amendment freedoms alleged in Plaintiffs' Amended Complaint did not present a redressable injury that conferred jurisdiction. (A206). The District Court rested its conclusory analysis on faulty logic.

### A.     Injuries Sustained During a Government Shutdown are Redressable.

Plaintiffs have sustained harm and seek redress for the loss of their constitutional freedoms in the form of a declaratory judgment and injunctive relief. In reaching its conclusions, the District Court overlooked the clear fact that Plaintiffs were prohibited from exercising their religion for twelve (12) days due to Defendants' orders and the enforcement of the Anti-Deficiency Act. Father Ray was threatened with arrest and fines if he performed the duties of a priest. Fred

14

Naylor was denied religious services.  This harm is not erased or mooted simply because currently the government is not in a time of shutdown.

42 U.S.C. § 1983 allows a plaintiff to seek redress against a defendant who, under color of state law, deprives him/her of "any rights, privileges or immunities secured by the Constitution." *Id*.  Upon a plaintiff prevailing under 42 U.S.C. § 1983, the defendant "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  *Id*.  And the Declaratory Judgment Act provides that the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The District Court does not address why Plaintiffs' claims cannot be redressed by 42 U.S.C. § 1983 or by the Declaratory Judgment Act.  Instead the District Court holds that because Plaintiffs sustained injury and that injury was accrued in the past, Plaintiffs' claims must now be moot. (A206).  If this were truly the standard for mootness, our courts' dockets would be vacant.

By this logic, a plaintiff who applies for a permit to speak on public land and is met with an unconstitutional prior restraint on speech has no case when the defendants deny the permit.  Under the District Court's reasoning, the denial of permit and the constitutional injury it caused plaintiff occurred in the past, so the injury cannot be redressed in court.  Or a plaintiff who has been battered cannot

15

bring a claim once the attack stops because he is no longer presently being hit by the defendant, but sustained an injury in the past.

While it is true that litigation may become moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)(in banc)(quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)).  Plaintiffs' rights, here, are presently affected.  Plaintiffs have sustained the irreparable injury of the loss of their constitutional freedoms, and the Defendants have not been held accountable for this loss. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  This need for relief did not "effectively end when the shutdown did" as the District Court concludes.  (A255). Plaintiffs continue to hold a "personal stake in the outcome."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990).  Fred Naylor continues to be a Catholic who wishes to attend Mass and Catholic services on base, and Father Ray has continued to provide his services as a Catholic priest employed by the Defendants. Plaintiffs' irreparable injuries based upon the denial of constitutional freedom have not healed themselves.

In order for an actual case and controversy to be present, all that is required is that the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendants."  *Id*. at 477.  Plaintiffs suffered the actual injury of the

16

loss of their constitutional freedoms.    The injury is no less real because the
Plaintiffs have used the past tense in their pleadings.  The same injuries are surely
"capable of repetition, yet evading review" and therefore rescued from mootness
and dismissal.  *Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. District
of Columbia*, 972 F.2d 365, 369 (D.C. Cir. 1992);  *Southern Pacific Terminal Co.
v. ICC*, 219 U.S. 498, 515 (1911); *Guardian Moving & Storage Co. v. ICC*, 952
F.2d 1428, 1432 (D.C. Cir. 1992).

Defendants' violated Plaintiffs' constitutional rights to religious freedom on
October 4, 2013 by forbidding the celebration of Catholic Mass upon penalty of
arrest and fines.  Defendants violated Plaintiffs' First Amendment rights again on
October 5, 2013, when as a result of Defendants' actions all religious services that
had been planned were canceled.  Defendants violated Plaintiffs' First Amendment
rights again on October 6, 2013, and each day thereafter that Father Ray was
prohibited from attending to the religious needs of his congregation, and his
congregation, including Fred Naylor, was denied access to Catholic services.  This
harm is not speculative.  Plaintiffs' constitutional injuries do not vanish when the
government shutdown ends, nor are Plaintiffs' claims for relief now moot simply
because the shutdown ended.  Plaintiffs rightfully seek a declaratory judgment that
Defendants violated the RFRA, as well as Plaintiffs' First Amendment freedoms.

**B.      Plaintiffs' Challenge to the Anti-Deficiency Act under RFRA and the First Amendment is Not Moot.**

The Anti-Deficiency Act that was used to threaten Father Ray with arrest and fines for practicing his religious freedom, is still current and valid law—just as it was back on October 4, 2013 when the law was imposed to violate Plaintiffs' constitutional rights.  Defendants' use of the Act will be repeated and continue to escape review unless addressed by this Court. *Christian Knights of Ku Klux Klan*, 972 F.2d at 369 (D.C. Cir. 1992).

Further, Defendants' voluntary cessation of their unconstitutional enforcement of an existing law does not moot a case or controversy unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States* v. *Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)); a heavy burden that Defendants have not met.  *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).

The Supreme Court has long recognized that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case[.]" *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (citations omitted); *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982).

18

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environ. Servs.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted).

The standard set by the Supreme Court "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)). Moreover, the party asserting mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again[.]" *Id.* (internal quotation marks omitted). In other words, "a defendant claiming that its voluntary compliance moots a case bears the *formidable burden* of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190 (emphasis added) (*citing Concentrated Phosphate*, 393 U.S. at 203).

Defendants cannot meet their "formidable burden"—Defendants cannot control the likely occurrence that the government will shutdown again. Since 1976 there has been a total of 18 government shutdowns. Defendants cannot promise that both Houses of Congress will agree upon their next budget and a shutdown

will be avoided. And Defendants certainly cannot promise that the Anti-Deficiency Act will not be imposed again—especially when it is the current, controlling law. To find the case moot would be to ignore the declaratory judgment requested by Plaintiffs for the constitutional injuries already inflicted upon Plaintiffs by the Defendants. Even if Defendants do not renew Father Ray's contract or decline to hire him for any further work with the government, Fred Naylor will still be harmed when the government enters another shutdown and decides it can ignore the First Amendment in its application of the Anti-Deficiency Act.

A case is only moot when subsequent events make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur. *Camreta v. Greene*, 131 S. Ct. 2020, 2034 (2011). Here, this would be in the form of (1) repeal of the Anti-Deficiency Act, or (2) an exemption made to the Anti-Deficiency Act that religious services may be voluntarily performed without penalty. Yet, even these solutions could not moot the past injury inflicted by the Defendants which merits declaratory relief.

The District Court dismisses Plaintiffs' argument that the Defendants' voluntary cessation fails to moot this litigation. (A206). The District Court erroneously found that the Defendants' cessation did not occur due to the filing of Plaintiffs' original Complaint. The District Court overlooked Plaintiffs'

allegations.   Plaintiffs properly alleged in their Amended Complaint that the Defendants stopped their application of the Anti-Deficiency Act in response to Plaintiffs filing this lawsuit.   (A93) ("On Tuesday, October 15, 2013, moments before Plaintiffs were to file a Motion for Temporary Restraining Order *and in response to Plaintiffs' complaint*, attorneys from the Department of Justice communicated that Father Ray Leonard would be allowed to return to his religious practices at the Kings Bay Chapel.") (emphasis added).

The District Court mistakenly relied upon *Am. Fed'n of Gov't Employees v. Rivlin*, 995 F. Supp. 165 (D.D.C. 1998), a decision of approximately one page in length.   In *Rivlin*, the Plaintiffs solely challenged whether the defendants "may require federal and District of Columbia employees to work without compensation during a budgetary impasse." *Id.* at 165.   This case is readily distinguishable from the case at hand.

Here, the Plaintiffs seek redress of constitutional violations.   In doing so, Plaintiffs do not argue, as the District Court believed, that the "question of mootness" is "limited to non-constitutional challenges." (A208).   Plaintiffs instead argue that existing injuries caused by constitutional violations should not be barred from the courthouse as moot.   Since Plaintiffs challenge an existing and incurred injury, their claims are not moot.   Plaintiffs should be able to redress the

Defendants' unconstitutional actions made both during and outside of government shutdown.

The District Court's finding essentially gives the government carte blanche freedom to violate its citizens' constitutional rights during time of shutdown. The District Court held that any constitutional claim accrued during that time is moot in the federal court system once the shutdown ends. Unlike the cases relied upon by the District Court brought during the time of government shutdown, a mere payment of money is not sufficient to redress Plaintiffs' claims. (A120-21). Plaintiffs' claims are not moot simply because the government now has funds to pay its contracts. A constitutional tort which has already been committed is not moot—even if it is committed during a time of shutdown.

It cannot be denied that the RFRA "applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after the enactment of this Act [enacted Nov. 16, 1993]." 42 U.S.C. § 2000bb-3(a). Yet, Defendants' position certainly goes against Congressional findings made at the enactment of the RFRA which declared that "the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution." 42 U.S.C. § 2000BB(a)(1). Indeed, the RFRA demands that even "laws 'neutral' toward religion may burden religious exercise as surely as laws intended to interfere with

22

religious exercise, and governments should not substantially burden religious exercise without compelling justification." 42 U.S.C. § 2000BB(a)(2)-(3). There was no exemption written into the RFRA that its application failed to apply during the time of government shutdown, nor should the Court *post facto* write such an exemption into the statute. To moot Plaintiffs' claims would be to guarantee that which the RFRA seeks to prevent, that "Religion will be subject to the standard interest-group politics that affect our many decisions. It will be the stuff of postcard campaigns, 30-second spots, scientific polling, and legislative horse trading." *Religious Freedom Restoration Act of 1991: Hearings before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary*, 102d Cong. 123 (1993) (statement of Rep. Solarz, chief sponsor of H.R. 2797). Religion should not be subject to unconstitutional limitations, even during time of government shutdown—it needs to be walled off from the "vicissitudes of political controversy." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

The RFRA sought to accomplish this "by legislating all at once, across the board, a right to argue for religious exemptions and make the government prove the cases where it cannot afford to grant exemptions." *Religious Freedom Restoration Act of 1991: Hearing before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary*, 102d Cong. 340 (1993) (statement of

23

Douglas Laycock, Professor of Law, University of Texas). Pursuant to the RFRA, Defendants must demonstrate that their application of a substantial burden on Plaintiff's religious freedom complies with a compelling government interest and uses the least restrictive means. 42 U.S.C. § 2000bb-1(b); 42 U.S.C. § 2000bb-2(3). Instead of proving that their actions and enforcement of the Anti-Deficiency Act were constitutional, Defendants seek to prevent Plaintiffs' claims from even being considered. Such action is not legally justified in this case. The District Court did not address why Plaintiffs' claim challenging the Anti-Deficiency Act under RFRA could not be redressed given that the Act is current, valid law that has not been repealed.

Plaintiffs satisfy standing and have "allege[d] personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Plaintiffs have sustained the "concrete and particularized" injury of the loss of their constitutional freedoms, which "affect[s] the plaintiff[s] in a *personal* and *individual* way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added). A declaratory judgment from the Court would vindicate Plaintiffs' constitutional rights and an injunction would prevent this First Amendment violation from recurring.

## II.       The District Court Erred by Dismissing Father Ray's Retaliation Claim for Lack of Standing.

Father Ray has standing because he can demonstrate present harm and a significant possibility of future harm that is unquestionably traced to his petition to the Court and can be redressed by the requested relief.  Defendants' attempts to rewrite Father Ray's retaliation claim should have been easily rejected by the District Court after a simple review of the Amended Complaint.

"For purposes of ruling on a motion to dismiss for want of standing, [the court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *State Nat'l Bank of Big Spring v. Lew*, 958 F.3d 499 (D.D.C. 2013) (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)).  "To establish constitutional standing, plaintiffs must satisfy three elements: (1) they must have suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) the injury must be 'fairly traceable to the challenged action of the defendant'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *NB ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 81 (D.C. Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  These elements are easily met in this case.  Father Ray suffered concrete harm as a result of Defendants' retaliatory conduct undertaken because he filed a First Amendment lawsuit.

25

In response to Father Ray filing this federal lawsuit, he was informed that Defendants unilaterally sought to invalidate his contract and to force him to sign a new contract with more arduous terms. (A92-94). Defendants claimed that they had inadvertently left out certain necessary terms in his original contract and that it was, therefore, invalid. (A92-94). Defendants threatened to terminate Father Ray's employment if he refused to sign a new contract with five additional pages of terms. (A92-94). Plaintiffs allege that Defendants treated Father Ray differently than similarly situated individuals who did not file a federal lawsuit challenging the government's actions during the shutdown. (A92-94). Additionally, the Defendants rejected one of Father Ray's invoices after he refused to sign a new contract, and it was not until Father Ray's attorneys contacted the Department of Justice, that the Navy relented in its position. (A92-94). Defendants' actions subjected Father Ray to uncertainty regarding his employment and the stress and anxiety that accompanies not knowing whether there will be sufficient funds to pay basic living expenses. (A152-163). Thus, Father Ray suffered actual harm as a result of Defendants' actions.

The District Court rejected Father Ray's argument that "'[p]ast wrongs' may serve as 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *NB ex rel. Peacock,* 682 F.3d at 84 (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983)). The District Court erroneously believed that Father

26

Ray did not fear future retaliation from the Defendants.  In coming to this conclusion, the District Court overlooked the pleadings before it.  Father Ray fears "that without declaratory or injunctive relief from the Court, the [Defendants] could again reverse its decision [to pay Father Ray and honor his employment contract] and determine for retaliatory reason that [he] should not be paid, or that [his] original contract not be honored."  (A158).  With the Defendants' prior retaliatory behaviors toward Father Ray, this belief is in fact reasonable.  There is no guarantee that Defendants' retaliation will not resume, making injunctive and declaratory relief necessary to prevent future harm.

## CONCLUSION

Based on the foregoing, this Court should reverse the District Court's decision to grant Defendants' motion to dismiss and remand this case for further proceedings.

Respectfully submitted,

THOMAS MORE LAW CENTER

By:    /s/ Erin Mersino
         Erin Mersino, Esq.

*Attorneys for Plaintiffs-Appellants*

27

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7), the foregoing Brief is proportionally spaced, has a typeface of 14 points Times New Roman, and contains 6,045 words, excluding those sections identified in Fed. R. App. P. 32(a)(7)(B)(iii).

Respectfully submitted,

THOMAS MORE LAW CENTER

/s/ Erin Mersino
Erin Mersino (P70886)

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.  I further certify that all of the participants in this case are registered CM/ECF users.

THOMAS MORE LAW CENTER

/s/ Erin Mersino
Erin Mersino (P70886)